UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DARLENE KELLEY, | Case No. 1:16-cv-02149-YY |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY,[1] | |
| Defendant. | |

YOU, Magistrate Judge:

      Plaintiff, Darlene Kelley ("Kelley"), seeks judicial review of the final decision by the

Commissioner of Social Security ("Commissioner") denying her application for Title II Disability

Insurance Benefits ("DIB") under the Social Security Act ("Act"). This court has jurisdiction to

---

[1] The official title of the head of the Social Security Administration is the "Commissioner of Social Security." 42 USC § 902(a)(1). Nancy A. Berryhill is currently the Acting Commissioner of Social Security. However, a "public officer who sues or is sued in an official capacity may be designated by official title rather than by name." FRCP 17(d).

1 - OPINION AND ORDER

review the Commissioner's decision pursuant to 42 USC §§ 405(g) and 1383(c)(3). All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c). ECF #5. For the reasons set forth below, the Commissioner's decision is REVERSED and this case is REMANDED for immediate calculation and payment of benefits.

## BACKGROUND

Born in October 1964, Kelley was 46 years old on the alleged onset date. Tr. 100, 148. Kelley dropped out of high school, but after five attempts was able to obtain her GED in 1991, at the age of 27. Tr. 60. When she was in high school, Kelley was diagnosed with a learning disability in mathematics and received tutoring. Tr. 273. On August 3, 2012, Wayne Taubenfeld, Ph.D., performed a series of tests to evaluate Kelley's cognitive abilities. Tr. 272-92. Kelley scored below the 10th percentile in all areas tested on the Wechsler Adult Intelligence Scale, Fourth Edition ("WAIS-IV") examination. Tr. 275. Areas tested included: verbal comprehension, perceptual reasoning, working memory, and processing speed. Her math, reading, and writing skills were at middle school levels and her full scale IQ was 69, which is considered "extremely low." Tr. 275, 277. Dr. Taubenfeld also noted that Kelley had low processing speed, poor executive functioning, and "very low levels" of memory. Tr. 285. He ultimately diagnosed Kelley with a variety of psychological disorders and "mild mental retardation." *Id.*

Although Kelley made several attempts to work after the alleged onset date, she explained that she was fired from each of those jobs due to her mental and physical impairments. Tr. 42-43, 56-57, 427.

///

**PROCEDURAL HISTORY**

Kelley filed an application for DIB on January 7, 2013. Tr. 148-54.[2] She alleged disability beginning December 9, 2010, due to Attention Deficit Hyperactivity Disorder ("ADHD"), a learning disability, anxiety, diabetes, neuropathy, and hypertension. Tr. 86. Her applications were denied initially and upon reconsideration. Tr. 104-07, 109-11. On April 30, 2015, a hearing was held before an Administrative Law Judge ("ALJ"), wherein Kelley was represented by counsel and testified, as did a vocational expert. Tr. 31-70. On May 27, 2015, the ALJ issued a decision finding Kelley not disabled within the meaning of the Act. Tr. 11-25. After the Appeals Council denied her request for review, Kelley filed a complaint in this court. Tr. 1-5. The ALJ's decision is therefore the Commissioner's final decision subject to review. 20 CFR § 422.210.

**STANDARD OF REVIEW**

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 USC § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). The reviewing court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences

---
[2] Citations are to the pages of the official transcript filed April 26, 2017 (ECF #11).

3 - OPINION AND ORDER

reasonably drawn from the record." *Rounds v. Comm'r*, 807 F.3d 996, 1002 (9th Cir. 2015) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 USC § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. This sequential analysis is set forth in the Social Security regulations, 20 CFR § 404.1520, in Ninth Circuit case law, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)), and in the ALJ's decision in this case, Tr. 11-13.

At step one, the ALJ found that Kelley had not engaged in substantial gainful activity after the alleged onset date. Tr. 13.

At step two, the ALJ found that Kelley has the following severe impairments: bilateral gastrocnemius equinus post-surgery, degenerative joint disease of the right knee, diabetes mellitus, peripheral neuropathy, obesity, ADHD, and borderline intellectual functioning. *Id*.

At step three, the ALJ found Kelley did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 14. The ALJ next assessed Kelley's residual functional capacity ("RFC") and determined that she could perform light work with the following limitations: she must be allowed to alternate between standing and sitting at will, but remaining on task while doing so; she is limited to frequent climbing of ramps and stairs and occasional climbing of ladders and scaffolds; she is limited to occasional exposure to hazards such as unprotected heights and moving mechanical parts; she is limited to simple and

routine tasks consistent with unskilled work as defined by the Dictionary of Occupational Titles; and she is limited to goal-oriented work, but not production-paced work.  Tr. 15.

At step four, the ALJ found Kelley could not perform any of her past relevant work.  Tr. 23.  At step five, the ALJ determined that Kelley could perform jobs that exist in significant numbers in the national economy, including mail clerk, information router, and order filler.  Tr. 24.

## DISCUSSION

Kelley argues that the ALJ erred by: (1) failing to evaluate whether she met the criteria for Listing 12.05(C); (2) improperly discounting her subjective symptom testimony; (3) and improperly rejecting the medical opinions of Dr. Rondeau and Dr. Sengenberger.  The Commissioner concedes that the decision of the ALJ "was not supported by substantial evidence," but argues that the case should be remanded for further proceedings rather than an immediate payment of benefits.  Def.'s Br. and Mot. to Remand 2, ECF #24.

### I.     Listing 12.05(C)—Borderline Intellectual Functioning

At step three, the ALJ determines whether the claimant's impairments, either individually or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity."  *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); 20 CFR § 404.1520(d).  If so, the claimant is presumptively disabled; if not, the ALJ proceeds to step four.  *Yuckert*, 482 U.S. at 141.

Kelley argues that she has borderline intellectual functioning that meets Listing 12.05(C).  To meet Listing 12.05(C), the claimant must demonstrate the following three elements:  "(1) subaverage intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) a valid IQ score of 60 to 70; and (3) a physical or other mental

5 - OPINION AND ORDER

impairment imposing an additional and significant work-related limitation." *Kennedy v. Colvin*, 738 F.3d 1172, 1174 (9th Cir. 2013) (citing 20 CFR Pt. 404, Subpt. P, App. 1, § 12.05); *see also Bailey v. Colvin*, No. 1:14-cv-00749-BR, 2015 WL 4488153, *11 (D. Or. July 22, 2015); *Pedro v. Astrue*, 849 F.Supp.2d 1006, 1011 (D. Or. 2011). The Commissioner concedes that the ALJ erred by "not evaluating borderline intellectual functioning under Listing 12.05(C)." Def.'s Br. and Mot. to Remand 3, ECF #24. However, the Commissioner contends that the record contains contradicting evidence with regard to the first two elements of the Listing, and argues that the matter should be remanded for the ALJ to conduct the proper analysis.

With respect to the first element, "[a] claimant may use circumstantial evidence to demonstrate adaptive functioning deficits, *such as* attendance in special education classes, dropping out of high school prior to graduation, difficulties in reading, writing or math, and low-skilled work history." *Pedro*, 849 F.Supp.2d at 1011-12 (emphasis added) (quotations omitted); *see* 20 CFR Pt. 404, Subpt. P, App. 1, § 12.05. The Commissioner contends that although Kelley dropped out of high school and reported having difficulty with mathematics, she was never enrolled in special education classes, eventually obtained her GED, and has performed semi-skilled work in the past. Def.'s Br. and Mot. to Remand 6, ECF #24. *Pedro* makes clear, however, that the claimant need not meet all of the potential factors; rather, some combination is sufficient. *Pedro*, 849 F.Supp.2d at 1012. In *Pedro*, the claimant was enrolled in special education classes but did not drop out of high school prior to graduation. *Id.* Here, although Kelley was not enrolled in special education classes, she dropped out of high school and never managed to graduate. Tr. 60, 207.

Moreover, in high school, Kelley was "diagnosed with a learning disability in mathematics," and needed extra tutoring. Tr. 273. Even as an adult, Kelley reached only an 8th

6 - OPINION AND ORDER

grade reading level and exhibited 6th grade math and writing skills. Tr. 277. Dr. Taubenfeld also noted that Kelley had low processing speed, poor executive functioning, and "very low levels" of memory. Tr. 285. Based on an evaluation of Kelley's cognitive functioning, Dr. Taubenfeld diagnosed her with mild mental retardation. *Id.*

The record further reveals that Kelley's low-skilled work was comparable to the claimant's low-skilled work in *Pedro*. There, the court relied in part on the claimant's history of low-skilled jobs, which included working as a courtesy clerk, washing laundry at a hospital, and doing production line food prep at a grocery store deli. *Pedro*, 849 F.Supp.2d at 1012. Kelley has a similar history of low-skilled work as a clerk, cashier, and doing production line food prep. Tr. 15, 56-57. Notably, Kelley explained that she was fired from several of those positions as a result of her mental impairments.[3] Tr. 46-47, 56-57. The ALJ, in fact, limited Kelley to unskilled work. Tr. 15.

In sum, circumstantial evidence establishes the onset of Kelley's mental handicap before the age of 22: she dropped out of high school, had difficulties in reading, writing, and math, and has a history of low-skilled work. *See Pedro*, 849 F.Supp.2d at 1011-12; 20 CFR Pt. 404, Subpt. P, App. 1, § 12.05. Accordingly, Kelley has satisfied the first prong of Listing 12.05(C).

To meet the second element of Listing 12.05(C), Kelley must show that she has a valid, verbal, performance, or full scale IQ of 60 to 70. *Kennedy*, 738 F.3d at 1174; 20 CFR Pt. 404, Subpt. P, App. 1, § 12.05. Kelley scored a 69 on a full scale IQ test, and Dr. Taubenfeld determined that the test results were "a valid representation of [Kelley's] cognitive functioning."[4]

---

[3] She was fired from the other jobs due to her physical impairments. Tr. 42-43, 427.
[4] The ALJ gave "[l]ess weight" to Dr. Taubenfeld's opinion; however, the ALJ provided *no* reasons for doing so and found that the limitations described by Dr. Taubenfeld were "not inconsistent" with the RFC. Tr. 21-22. Moreover, the ALJ did not identify any specific portions

7 - OPINION AND ORDER

Tr. 275. The Commissioner argues that an ALJ has discretion to determine whether an IQ score is valid. Def.'s Br. and Mot. to Remand 6, ECF #24. However, the ALJ acknowledged the IQ score at multiple points in his opinion, and the Commissioner concedes that the ALJ never made a finding that the IQ score was invalid. Tr. 16, 19-20; Def.'s Br. and Mot. to Remand 6, ECF #24.

The Commissioner argues that the ALJ "implicitly questioned the validity of the IQ score," and that the validity of the IQ score is therefore an unresolved question. Def.'s Br. and Mot. to Remand 7, ECF #24. The Commissioner's assertion is predicated on the assumption that, in the absence of a more detailed finding by the ALJ, the validity of Kelley's IQ score is uncertain. However, the regulations provide that an IQ score is presumed to be valid. 20 CFR Pt. 404, Subpt. P, App. 1, § 12.05.

Moreover, the ALJ's opinion indicates that he did not implicitly question Kelley's IQ score. Rather, he believed Kelley was capable of a somewhat higher degree of functioning, despite her extremely low IQ. *See* Tr. 16 ("Although claimant scored a full scale IQ of 69 and verbal of 70, she has a GED, was not enrolled in special education when in high school, and produced a work history reflective of higher functionality.").

Even assuming that the ALJ implicitly found that Kelley's IQ score was invalid, such a conclusion is unsupported by substantial evidence. Dr. Taubenfeld was aware of Kelley's work history, her GED, and the fact that she was not in special education classes during high school. Tr. 273. Nonetheless, Dr. Taubenfeld concluded that the IQ test was valid. Tr. 275. The "ALJ .

---

of Dr. Taubenfeld's opinion that he found wanting. Accordingly, to the extent that the ALJ attempted to reject Dr. Taubenfeld's opinion, he failed to provide the requisite "specific and legitimate reasons." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

. . may not substitute his own view of the effects of a mental impairment on a claimant for that of an examining psychologist." *Nelsen v. Barnhart*, No. C 00–2986 MMC, 2003 WL 297738, at *4 (N.D.Cal. Feb. 4, 2003).

Additionally, Kelley's uncontroverted testimony was that she was fired from several jobs due to her mental impairments. For example, she was fired from Amy's Kitchen because she could not get the "hang of" making burritos. Tr. 56. Although coworkers attempted to teach her, she never successfully learned because the process for making burritos "wasn't sinking in [her] head." *Id.* At McDonald's, the supervisor attempted to train Kelley for almost every possible position, but she was unsuccessful at learning any of them. Tr. 57. Kelley was fired from Walmart because she could not "keep [her] mind on [the] job." Tr. 47.

Furthermore, the fact that Kelley eventually obtained her GED does not invalidate her IQ score. *See Pedro*, 849 F.Supp.2d at 1012-13 (the fact that claimant graduated from high school did not invalidate IQ score); *Bailey*, 2015 WL 4488153, at *1, 12 (same). Kelley unsuccessfully tried to obtain her GED four times before finally passing on her fifth attempt. Tr. 60. Finally, the fact that Kelley was not in special education programs does not invalidate the IQ score; she was diagnosed with a disability in math, and her reading, writing, and math skills remain at middle school levels. Tr. 273, 277. For all of these reasons, Kelley's full scale IQ score of 69 satisfies the second element of Listing 12.05(C).

To meet the third element of Listing 12.05(C), the claimant must have a physical or other mental impairment imposing an additional and significant work-related limitation of function. *Kennedy*, 738 F.3d at 1174. "[A]n impairment imposes a significant work-related limitation of function when its effect on a claimant's ability to perform basic work activities is more than slight or minimal." *Fanning v. Bowen*, 827 F.2d 631, 633 (9th Cir. 1987). A finding at step two

9 - OPINION AND ORDER

by the ALJ that a claimant suffers from an additional "severe" impairment is sufficient to satisfy the third requirement of Listing 12.05(C). *Id.* at 633 n.3; *see also Pedro*, 849 F.Supp.2d at 1015.

At step two, the ALJ found that in addition to borderline intellectual functioning, Kelley had the severe impairments of bilateral gastrocnemius equinus post-surgery, degenerative joint disease of the right knee, diabetes mellitus, peripheral neuropathy, obesity, and ADHD. Tr. 13. This finding satisfies the third requirement of Listing 12.05(C). *Fanning*, 827 F.2d at 633. By fulfilling all three elements, Kelley meets Listing 12.05(C) and is presumptively disabled.[5] 20 CFR § 404.1520(d).

## II. Remand

Because Kelley has met Listing 12.05(C), she is "presumed unable to work and is awarded benefits without a determination whether [s]he actually can perform [her] own prior work or other work." *Kennedy*, 738 F.3d at 1176 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)); *see also Baxter v. Sullivan,* 923 F.2d 1391, 1395 (9th Cir. 1990) (where a claimant meets a listing she is "presumed disabled, and no further inquiry is necessary"). As the record is complete, there is no need for further proceedings, and this matter is remanded for an award of benefits pursuant to sentence four of 42 U.S.C. § 405(g). *Nicholson v. Colvin*, 106 F.Supp.3d 1190, 1198 (D. Or. 2015) (remanding for benefits because claimant met Listing 12.05(C)).

///

///

///

///

---

[5] The Commissioner asserts that the record as a whole creates serious doubt that Kelley was disabled, making a remand for benefits improper; however, none of the Commissioner's alleged reasons for such doubt would affect the analysis of Listing 12.05(C).

## CONCLUSION

For the reasons discussed above, the Commissioner's decision is REVERSED and this case is REMANDED for the immediate calculation and payment of benefits.

DATED March 26, 2018.

                                                    /s/ Youlee Yim You
                                              Youlee Yim You
                                              United States Magistrate Judge